UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARRYL MATTHEWS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) No. 4:12-CV-901-SPM |
| | ) |
| TOM VILLMER,[1] | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Darryl Matthews' ("Petitioner's") *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 16). After reviewing the case, the Court has determined that Petitioner is not entitled to relief, and the petition will be dismissed.

**I.  FACTUAL BACKGROUND**

On the evening of May 6, 2003, David Salvato was taking out the trash at his café when he was confronted by an individual (later identified as Petitioner) who demanded Salvato's money and said he had a pistol in his belt. Resp't Ex. A at 177-79. Salvato observed a silver automatic pistol in the individual's waist band. *Id.* at 180. Although Salvato initially refused, he eventually gave the individual his money and cell phone. *Id.* at 180-81. The two men were two to three feet apart during the entire ten minute encounter, the parking lot was "well lit," and Salvato stated that he was able to see the individual "very easily." *Id.* at 179-82. Salvato testified that

---

[1] Since the filing of his petition, Petitioner has been transferred to Farmington Correctional Center, where Tom Villmer is the Warden. Tom Villmer will therefore be substituted as the proper respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

1

during the encounter he was "trying to get a good ID on [the robber]." *Id.* at 180. After the robber left, Salvato called 911, described the robber, and said he could identify the robber. *Id.* at 183-85. Officers came to the scene, and Salvato gave a more complete description. *Id.* at 185.

Upon obtaining Salvato's description of the robber at the scene, officers went to the University City Police Department with Salvato's description, and they were given Petitioner's name as a possibility. *Id.* at 146-47. Officers then used a computer system to create a photo spread containing Petitioner's photograph along with photographs of five other individuals with similar physical characteristics. *Id.* at 131-34; Resp't Ex. B at 286-87.

On the following evening, May 7, 2003, Sherryl Washington had just exited her car when she was approached by an individual (later identified as Petitioner) who came toward her with a gun and told her to get down. Resp't Ex. A at 206-09. Washington saw that he was holding a silver hand gun. *Id.* at 210. Her robber stood over her and pointed his gun at her head, demanding her money and credit cards. *Id.* at 211. The encounter lasted for approximately nine minutes, during which time the robber stood right in front of Washington and faced her, and she "was looking at him the whole time." *Id.* at 212-13. After the robber fled, Washington called the police and described the incident and the robber. *Id.* at 213-15.

When the police arrived to interview Washington that night, they brought along the photo lineup that had been created based on Salvato's description of *his* robber from the night before. *Id.* at 132. Although the police had initially intended to show the photo lineup to Salvato, they showed it to Washington instead after overhearing a broadcast of her robbery, which had occurred near the first robbery and involved a similar suspect description. *Id.* at 132-33. The police told Washington that her robber may or may not be in the lineup. *Id.* at 136. She immediately selected Petitioner's photo from the lineup and signed and dated her selection. *Id.* at

137. This identification occurred at around 11:00 p.m. which was within an hour of the initial call to police about Washington's robbery. *Id.* at 214, 219.

After Washington's identification, the police located Petitioner near his known hangout spot in a local parking lot and detained him. Resp't Ex. B at 266-67, 270. The police then brought Washington to that lot on the same night. Resp't Ex. A at 159. She stayed in a police car while police shined a light on Petitioner and asked her if she recognized him. *Id.* at 160. She said yes, because she recognized his face and clothes and it was very clear he was the person who had robbed her. *Id.* Washington was one hundred percent certain of her identification, and the police did not tell her that they believed Petitioner to be the robber or that they wanted her to pick him. *Id.* at 160-61. This identification took place a little over an hour after the robbery. *Id.* at 162.

By the next day, May 8, 2003, police had prepared another six-photo lineup to show to Salvato. *Id.* at 138. Salvato was told before viewing the photo lineup that his robber might or might not appear therein. *Id.* at 139. Salvato selected Petitioner's photo and initialed and dated his selection. *Id.* at 140. Salvato was one hundred percent certain of his selection and stated that the police did not help him at all in identifying Petitioner. *Id.* at 202. The police at this point also prepared a live lineup to show Salvato, composed of individuals from the police holdover with physical characteristics similar to Petitioner's. *Id.* at 141. When Salvato viewed this live lineup, the police again advised him that his robber might or might not be present; Salvato selected Petitioner from this live lineup as the person who had robbed him. *Id.* at 143. According to Salvato's testimony at trial, Petitioner did not stand out in any way from the other members of either the photo lineup or the live lineup. *Id.* at 189-90.

## II. PROCEDURAL BACKGROUND

On February 9, 2005, a jury found Petitioner guilty of two counts of first-degree robbery. Resp't Ex. B at 369-70. On April 29, 2005, a judge in the Circuit Court of St. Louis, Missouri sentenced Petitioner to two 20-year sentences to run concurrently. Resp't Ex. C at 84-86. The Missouri Court of Appeals affirmed Petitioner's conviction on June 6, 2006. Resp't Ex. F. On August 1, 2006, Petitioner filed a motion for post-conviction relief under Missouri Rule 29.15, Resp't Ex. G at 3, which was amended by counsel on April 3, 2007, *id.* at 17. Petitioner's motion for post-conviction relief was granted in part and denied in part without a hearing.[2] Resp't Ex. G at 74. On June 21, 2011, the Missouri Court of Appeals affirmed the decision of the motion court. Resp't Ex. J. On April 28, 2012, Petitioner filed the instant habeas corpus petition. (Doc. 1).

## III. LEGAL STANDARD

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs federal habeas petitions filed by state prisoners. Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). By limiting federal habeas review of state court decisions, AEDPA aims "to prevent federal habeas retrials and to ensure state-court

---

[2] The trial court partially granted Petitioner post-conviction relief by striking his "prior offender" designation from the sentence and judgment, but denied Petitioner's motion in all other respects. Resp't Ex. G at 74.

4

convictions are given effect to the extent possible under the law." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (citing *Colvin v. Taylor*, 324 F.3d 583, 586 (8th Cir. 2003)).

Under AEDPA, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell*, 535 U.S. at 694. "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

## IV. DISCUSSION

Petitioner asserts three grounds for habeas relief. In Ground One, Petitioner argues that the trial court erred in denying Petitioner's motion to suppress the out-of-court identifications made by Salvato and Washington. In Ground Two, he contends that he was denied effective assistance of counsel in violation of the Sixth Amendment because his trial counsel failed to file a motion to sever the counts related to the robbery of Salvato from those related to the robbery of Washington before the first day of trial. In Ground Three, Petitioner argues that he was denied effective assistance of counsel in violation of the Sixth Amendment in that his trial counsel failed to object to a prosecutor's remark about Petitioner's future dangerousness during closing arguments. The Court will address each ground in turn.

### A. Ground One: Failure to Suppress Out-of-Court Identification Testimony

Petitioner argues in Ground One that the trial court erred in denying his motion to suppress the out-of-court identifications made by Salvato and Washington. Petitioner has not specified precisely which of the four out-of-court identifications in the record he intends to challenge, nor has he set forth supporting facts relating to his challenges. In his direct appeal, Petitioner made arguments regarding only three of the identifications: Washington's photo lineup identification, Washington's show-up identification, and Salvato's live lineup identification. Resp't Ex. D at 16-21. Thus, to the extent that Petitioner raises a claim based on the fourth identification (the photo lineup identification by Salvato), it is procedurally defaulted, and Petitioner offers no basis for excusing the procedural default.[3] The Court will therefore address

---

[3] A federal habeas court reviewing a state conviction under 28 U.S.C. § 2254 may only consider claims that the petitioner has presented in state court in conformity with state procedural rules. *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012). "In Missouri, a claim must be presented at each step of the judicial process to avoid default." *Id.* at 1087. (citing *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994)). Here, however, Petitioner failed to present his

only the three out-of-court identifications that were raised by Petitioner and denied by the Missouri Court of Appeals on the merits. Resp't Ex. F.

*1. Washington's photo lineup identification*

Petitioner first argued in his direct appeal that Washington's photo lineup identification was unduly suggestive because it was based on a lineup created using Salvato's description of his robber (rather than hers) and because the police created a sense of urgency by approaching her with the photo lineup only minutes after the robbery occurred. Resp't Ex. D at 16-18.

The Supreme Court has recognized that there is "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 132 S. Ct. 716, 720(2012). However, even if there is "[a]n identification infected by improper police influence," it "is not automatically excluded." *Id.* If "the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted." *Id.* A "totality of the circumstances" approach is used to assess the reliability of an identification, and the factors to be considered include "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Id.* at 725 & n.5 (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)).

---

challenge to Salvato's photo lineup identification in the Missouri Court of Appeals. Consequently, it is procedurally defaulted unless Petitioner can show either (1) cause for the default and actual prejudice as a result of the constitutional violation, or (2) that a failure to consider the claim would result in a fundamental miscarriage of justice. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Petitioner has offered no argument that either condition for excusing procedural default is met.

Applying the first step of inquiry described in *Perry*, the Missouri Court of Appeals found that the identification was not improperly suggestive, reasoning that "nothing in the record suggests that Washington based her identification on the procedures employed by the police or that she felt pressured to make a selection." Resp't. Ex. F at 3. As the state court noted, the photo lineup included six photos of individuals with physical characteristics similar to those of Petitioner, and the officer who showed her the photographs cautioned her that her robber might or might not appear in the lineup. Resp't Ex. A at 131-36, Resp't. Ex. B at 286-87. Moreover, Washington testified that no one was rushing her when she identified Petitioner's photo, that the officers did not tell her that they wanted her to pick Petitioner, that the decision was hers, and that she selected Petitioner's photo because "I saw the picture of the man that robbed me." Resp't Ex. A at 160-61, 236. The state court's finding that the circumstances were not suggestive was not an unreasonable application of federal law. *See United States v. Triplett*, 104 F.3d 1074, 1079-80 (8th Cir. 1997) (lineup not suggestive where witness was shown five individuals with similar physical characteristics and asked whether he recognized them, where the detectives did not suggest that any particular person in the lineup was implicated and did not indicate that the witness should identify any specific person).

Applying the second step of the inquiry described in *Perry*, the Missouri Court of Appeals found that even assuming that this identification involved suggestive circumstances, it was nonetheless independently reliable in light of the five reliability factors identified by the Supreme Court. Resp't Ex. F at 6-7; *Perry*, 132 S. Ct. at 725 & n.5. That determination was reasonable. First, Washington had a good opportunity to view her robber at the time of the crime, viewing him for approximately nine minutes at close range. Resp't Ex. A at 212-13. Second, Washington paid close attention to Petitioner during her robbery, looking at his face "the whole

time." Resp't Ex. A at 213. Third, the Missouri Court of Appeals found that Washington gave an accurate description of Petitioner, and Petitioner has not established that that was an unreasonable finding.[4] Fourth, Washington testified that she was 100% certain of her identification. Resp't Ex. A at 161, 237-38. Fifth, Washington made her identification within about an hour of the time she was robbed, which enhances its reliability. In light of this record, the Missouri Court of Appeals' conclusion that this identification was sufficiently reliable to be admissible was not an unreasonable application of federal law and did not involve an unreasonable determination of the facts. *See, e.g.*, *Briscoe v. Cty. of St. Louis, Mo.*, 690 F.3d 1004, 1012 (8th Cir. 2012) (identification reliable where the victim "had ample opportunity to view her attacker during the prolonged and well-lit encounter," "focused on his face in order to identify him later," gave a "pre-identification description of her attacker's face [that] was fairly consistent with [the lineup] photo," "expressed complete confidence in her identification," and "made the identification within hours of the attack").

2. *Washington's show-up identification*

Second, Petitioner argued that Washington's show-up identification was impermissibly suggestive because (1) Petitioner was handcuffed and standing next to a police officer during the encounter and the police were shining lights on him, and (2) the show-up identification occurred shortly after Washington viewed the photo lineup in which Petitioner had appeared. Resp't. Ex. D at 18-19. Applying the first step of the inquiry, the Missouri Court of Appeals found that Washington's show-up identification was not impermissibly suggestive. Resp't Ex. F at 3-4. That conclusion did not involve an unreasonable application of federal law or an unreasonable

---

[4] Washington described her robber as a black male, 5'10" to 5'11", with a medium build and medium complexion. Resp't Ex. A at 233-34. She testified Petitioner appeared heavier at trial than he had when he robbed her. Resp't Ex. A at 240-42.

determination of the facts. In *United States v. Pickar*, 616 F.3d 821, 827-28 (8th Cir. 2010), the Eighth Circuit held that an identification was not unduly suggestive even though the suspect was shown to witnesses while standing handcuffed next to a uniformed police officer with a flashlight being shined in his face. The court noted that "'absent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations.'" *Id.* (quoting *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998)). *See also United States v. Martinez*, 462 F.3d 903, 910-11 (8th Cir. 2006) (show-up identification not unduly suggestive where the suspect was handcuffed, police officers were present, and the suspect had been driven to the scene in a police car). The facts of this case are quite similar to those in *Pickar* and *Martinez*. In addition, the Eighth Circuit has held that a live lineup is not unduly suggestive merely because the defendant was the only individual to appear in both that lineup and an earlier photo lineup. *See Briscoe*, 690 F.3d at 1014. Given the Eighth Circuit's precedents in *Pickar, Martinez*, and *Briscoe*, the Court cannot say that the Missouri Court of Appeals' ruling involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

Moreover, applying the second step of the inquiry, the Missouri Court of Appeals found that even assuming that this identification involved suggestive circumstances, it was nonetheless independently reliable in light of the five reliability factors identified by the Supreme Court, as discussed above with respect to Washington's photo lineup identification. Resp't Ex. F at 6-7. Notably, the show-up identification was made within about an hour of the robbery, and Washington testified that she was 100% sure that the person she saw at the show-up identification was the person that robbed her. Resp't Ex. A at 222. The Missouri Court of Appeals' determination was reasonable in light of the record and was not an unreasonable application of federal law. Thus, even assuming *arguendo* that the show-up identification was

impermissibly suggestive, Petitioner would not be entitled to relief based on admission of this identification.

### 3. *Salvato's live lineup identification*

Third, Petitioner argued that Salvato's live lineup identification was impermissibly suggestive because it was made after Salvato had already picked Petitioner's photo out of a lineup and Salvato therefore knew who he was looking for. Resp't Ex. D at 19-20. However, as the Missouri Court of Appeals found and as the Eighth Circuit recognized in *Briscoe*, the fact that a live lineup identification was conducted after a photo lineup does not, standing alone, make the resulting identification impermissibly suggestive. Resp't Ex. F at 5-6; *Briscoe*, 690 F.3d at 1014. As the Missouri Court of Appeals reasonably found, nothing in the record suggests that Salvato's identification at the live lineup arose from the earlier photo lineup identification, and so it was not impermissibly suggestive.

In addition, applying the second step of the inquiry, the Missouri Court of Appeals found that even assuming that the identification was suggestive, it was nonetheless independently reliable in light of the relevant reliability factors. Resp't Ex. F at 6-7. That determination was reasonable. First, Salvato had a good opportunity to view Petitioner at the time of the crime, viewing him from two to three feet away for approximately ten minutes in a "well lit" parking lot. Resp't Ex. A at 179, 181-82. Second, Salvato paid close attention to the robber during the encounter, testifying that he "was trying to get a good ID on [the robber]." *Id.* at 180. Third, the Missouri Court of Appeals found that Salvato gave an accurate description of Petitioner, which

was not an unreasonable finding in light of the record.[5] Fourth, Salvato's identification was made only two days after the robbery. *Id.* at 138-41.

For all of the above reasons, the Missouri Court of Appeals' conclusions with regard to the challenged identifications did not involve an unreasonable application of federal law or an unreasonable determination of the facts. Thus, Ground One must be denied.

### B. Ground Two: Ineffective Assistance of Counsel—Failure to File Pretrial Motion to Sever

In Ground Two, Petitioner contends that he was denied effective assistance of counsel in violation of the Sixth Amendment because his trial counsel failed to file a motion to sever the counts related to the robbery of Salvato from those related to the robbery of Washington *before* the first day of trial. (Counsel did make an oral motion to sever on the first day of trial, which the trial court considered and denied on the record. Resp't. Ex. A at 4-6.) Petitioner raised this claim in his motion for post-conviction relief and his appeal from the denial of that motion, and the Missouri Court of Appeals denied the claim on the merits. Resp't Ex. J at 4-6.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). With regard to the performance prong, the Supreme Court in *Strickland* instructed that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Consequently, to prevail on the performance prong, Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls

---

[5] Salvato described his robber as a black male, 5'8", with a slender build and dark complexion. Resp't. Ex. A at 183, 197. He testified that Petitioner appeared heavier at trial than he had when he robbed them. Resp't Ex. A at 204-06.

within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted). With regard to the prejudice prong, deficient performance prejudices a petitioner's defense only when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When this Court reviews claims of ineffective assistance of counsel in the habeas context, it must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 131 S. Ct 1388, 1410 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state appellate court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In denying Petitioner relief on Ground Two, the Missouri Court of Appeals first found that Petitioner could not establish the performance prong of *Strickland* because he had failed to show any error by his trial counsel. The court noted that Petitioner's trial counsel *did* file a motion to sever that was considered and denied by the trial court and that Petitioner could not show that filing the motion earlier would have led to a different result. Resp't. Ex. J at 4. Second, the Missouri Court of Appeals found that Petitioner could not establish the prejudice prong, because "the record shows [Petitioner's] offenses were properly joined" under Missouri state law and therefore the motion "would not have been successful." *Id.* at 5-6. The Missouri Court of Appeals made this determination based on its interpretation of Mo. Rev. Stat. §§ 545.140(2) and

13

545.885, as well as Rules 23.05 and 24.07 of the Missouri Rules of Criminal Procedure. *Id.* at 5-6.

The Missouri Court of Appeals' decision was not contrary to, or an objectively unreasonable application of, *Strickland*. The state court properly articulated the *Strickland* standard and properly articulated the requirement for showing deficient performance and prejudice under *Strickland*. It was not objectively unreasonable for the state court to find that trial counsel did not err by filing a motion on the first day of trial that would have been unsuccessful under Missouri law regardless of when it was filed, nor was it objectively unreasonable for the state court to find that Petitioner was not prejudiced under *Strickland* by his counsel's failure to file a motion that would have been unsuccessful under Missouri law. "Determinations of state law made by a state court are binding on a federal court in habeas proceedings." *Lupien v. Clarke*, 403 F.3d 615, 619 (8th Cir. 2005). This court cannot "second-guess the decision of a Missouri state court on Missouri law." *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.").

For all of the above reasons, Ground Two must be denied.

### C. Ground Three: Ineffective Assistance of Counsel—Failure to Object to Prosecutor Remark

In Ground Three, Petitioner argues that he was denied effective assistance of counsel in violation of the Sixth Amendment in that his trial counsel failed to object to the following statement by the prosecutor during closing argument: "Ladies and gentlemen, there is no doubt that [Petitioner] did what he did. And these vile and heinous actions need to be held accountable. He cannot be allowed to walk the streets and do this again." Resp't Ex. B at 361. Petitioner

raised this claim in his motion for post-conviction relief and his appeal from the denial of that motion, and the Missouri Court of Appeals denied the claim on its merits. Resp't Ex. J at, 6-8.

As discussed above, to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) "[his] counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. at 687. Because the state court has already addressed this claim, Petitioner also "must show that the [state appellate court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. at 699. This assessment is made in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The Missouri Court of Appeals articulated the *Strickland* standard and found that neither prong was satisfied. First, it found that counsel was not deficient, because the decision not to object to the statement was a reasonable trial strategy based on a desire not to highlight a problematic area. Resp't Ex. J at 7. Second, the court found no prejudice because in light of the overwhelming evidence against Petitioner, there was no reasonable probability that the prosecutor's comment affected the outcome of the trial. *Id.*

The Missouri Court of Appeal's decision did not involve an objectively unreasonable application of *Strickland*. As to the performance prong, when trial counsel decides not to object to a prosecutor's statement in a summation, courts will generally presume it to have been a strategic choice. *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994). Only when a prosecutor's comments were so improper that trial counsel's only defensible choice was to object will a failure to do so constitute deficient counsel performance under the first prong of *Strickland. Id.* Here, it was not objectively unreasonable for the state court to find that trial counsel's decision not to object to this statement was a reasonable trial strategy, because

15

objecting might have focused the jury's attention on the comment or annoyed the jury. *See id.* ("Counsel's decision to object during the summation must take into account the possibility that the court will overrule it and that the objection will either antagonize the jury or underscore the prosecutor's words in their minds."); *Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014) ("Whether to object during opposing counsel's summation to the jury is a matter of trial strategy . . . Strategic decisions like this one are virtually unchallengeable, and we see no substantial argument that [the attorney's] decision was outside the wide range of reasonable professional assistance.") (internal citations and quotation marks omitted). As to the prejudice prong, it was not unreasonable for the Missouri Court of Appeals to determine that given the substantial evidence against Petitioner, there was no reasonable probability that the jury would have acquitted Petitioner but for the prosecutor's arguably objectionable comment.

For all of the above reasons, Ground Three must be denied.

## V. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a Certificate of Appealability. Accordingly,

16

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no Certificate of Appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of September, 2015.